## A05A1601. SCOTT v. THE STATE.
### (625 SE2d 526)

MILLER, Judge.

Following a jury trial, Travis Lamont Scott was convicted of trafficking in cocaine. On appeal, he contends that the trial court erred in admitting similar transaction evidence, denying his motion to suppress, and presenting an indictment to the jury that contained the names of several other persons who were not on trial. Scott also contends that his trial counsel was ineffective. We discern no error and affirm.

Viewed in the light most favorable to the verdict, the evidence reveals that Damon Nelson asked Antonio Milligan for the name of a person who could sell him cocaine. Milligan gave Nelson Travis Scott's name and telephone number. Scott met with Milligan, Damon Nelson, and Antonio Nelson on the day of the proposed drug deal, and led them to an apartment complex where the deal was to take place. Scott drove to the apartment complex in a silver Toyota Camry, and Milligan and the Nelsons followed in a burgundy van. A female associate of the Nelsons also followed in a gold Camry. A silver Lexus entered the apartment complex shortly thereafter.

Scott parked his silver Camry at the end of the apartment complex parking lot. The Nelsons' female associate parked the gold Camry next to the passenger side of the Nelsons' burgundy van, with the van only a few parking spaces away from both Scott's Camry and the Lexus. Antonio Nelson exited the van and obtained a shopping bag from the trunk of the gold Camry. He took this bag to Scott. Scott then went to the silver Lexus, retrieved a duffle bag, and placed it in the trunk of the gold Camry.

A police officer responding to a call from a concerned citizen about possible drug activity at the apartment complex arrived at the scene and saw Scott and Damon and Antonio Nelson huddled around the open trunk of the gold Camry. Upon seeing the officer, Scott and the Nelsons quickly closed the trunk of the gold Camry and fled the scene.

Around the same time, the officer also noticed someone slamming shut the sliding door of the burgundy van. The officer ordered the female driver of the gold Camry to place her hands above her head and also ordered the occupants of the van to exit. Milligan and another man emerged from the van and were ordered to the ground. Additional officers arrived at the scene and helped to secure Milligan, the other individual from the van, and the female driver of the gold Camry.

The female driver consented to a search of the gold Camry's trunk, where the police discovered four kilograms of cocaine in a black leather bag and an additional kilogram in a package that had been cut open. The police also searched the silver Lexus at the scene, which had been left with its door open and the engine running, finding over $87,000 in cash. Police questioned Milligan at the scene, who informed the police that "T" was one of the men who had fled and that "T" owned the silver Camry. The police then impounded the gold Camry, the burgundy van, the silver Lexus, and the silver Camry.

The next day, the police obtained a search warrant for the silver Camry and conducted a search. They found various documents with Scott's name on them, a small bag containing several rubber bands, and over $6,000 in cash. A warrant was then issued for Scott's arrest.

Scott was arrested several months later after being pulled over for a traffic violation. At the time of Scott's arrest, police discovered digital scales, marijuana, over $10,000 in cash, and half an ounce of cocaine in his car. Scott admitted that the cocaine was his and further informed police that he could give them the name of a supplier who could provide 20 pounds of marijuana and a kilogram of cocaine. The evidence found in connection with Scott's arrest was later admitted at trial as similar transaction evidence.

Scott was convicted of trafficking in cocaine, and he now appeals.

1. Scott argues that the trial court erred in admitting evidence of the drug activity connected to his arrest as similar transaction evidence in his trafficking trial because the similar transaction was not similar enough to the trafficking offense for which he was being tried. Pretermitting the question whether the evidence was properly admitted as a similar transaction, however, we hold that the evidence was otherwise admissible as relevant evidence concerning the circumstances surrounding Scott's arrest for the crime at issue. "As a general rule, evidence of the circumstances surrounding an arrest is admissible if it is relevant to the crimes charged." *Gresham v. State*, 255 Ga. App. 625, 630 (4) (566 SE2d 380) (2002), citing *Benford v. State*, 272 Ga. 348, 349-350 (3) (528 SE2d 795) (2000). Even where the evidence involves other crimes for which the defendant has not been charged, such evidence may be admissible where relevant to the crime of which the defendant is accused. See, e.g., *Butts v. State*, 250

Ga. App. 695, 696-697 (1) (552 SE2d 888) (2001). The decision to admit this evidence lies within the sound discretion of the trial court, and will not be disturbed on appeal absent a clear abuse of discretion. Id. at 696 (1).

Here, not only was Scott found in possession of cocaine and a large amount of cash at the time of his arrest, he also admitted to officers his ownership of the cocaine and his connection to a higher level drug dealer with access to kilograms of cocaine. This evidence was relevant to Scott's alleged involvement as a dealer of large quantities of cocaine — the very crime for which he was being tried. We find no error in the trial court's admission of this evidence. See *Blaylock v. State*, 242 Ga. App. 195, 197 (529 SE2d 203) (2000) (evidence of crack pipe found on defendant at time of arrest was admissible in defendant's trial for selling cocaine).

2. Scott argues that the trial court erred in denying his motion to suppress evidence seized from the silver Camry. We disagree.

Where, as here, the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). The trial court's decision will not be disturbed if there is evidence to support it. *Taylor v. State*, 263 Ga. App. 420, 422 (2) (587 SE2d 791) (2003).

Here, a concerned citizen in the apartment complex contacted the police regarding suspected drug activity. See, e.g., *Hudson v. State*, 253 Ga. App. 210, 211 (558 SE2d 420) (2002) (information supplied by law-abiding concerned citizen inherently more credible and reliable than that of anonymous tipster). When an officer arrived at the apartment complex, he personally observed the scene that had been described by the concerned citizen, and Scott fled after being seen huddled around the trunk of a car that contained five kilograms of cocaine. At the same time, the officer saw other people who were possibly involved in the drug deal flee the scene, and saw others slam the door of a van. The police officer had reason to suspect that several individuals and vehicles were involved in the drug transaction — suspicions bolstered by the discovery of over $87,000 in cash in an open car with its engine still running. This information, combined with the indication from one of the suspects at the scene that one of the men who had fled was driving a silver Camry, sufficed to create probable cause for the search of the silver Camry. See *Jones v. State*, 195 Ga. App. 868, 869 (2) (395 SE2d 69) (1990) (totality of circumstances, including information from concerned citizen, flight of the accused, and observations by police officers can create probable cause to justify search of vehicle). Where such probable cause exists, an

officer need not obtain a warrant before searching a car for suspected contraband. *Benton v. State*, 240 Ga. App. 243 (522 SE2d 726) (1999).

Since probable cause existed to search the silver Camry at the scene, it is of no consequence that the car was impounded before the warrant was issued for its search.

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

*Chambers v. Maroney*, 399 U. S. 42, 52 (90 SC 1975, 26 LE2d 419) (1970).

The trial court did not err in denying the motion to suppress.

3. Scott argues that the trial court erred in presenting an indictment to the jury that contained the names of several people who were not on trial with him. We disagree.

Although the indictment contained the names of other individuals besides Scott who were allegedly involved in the drug deal at the apartment complex, the court made clear in its charge that the jury was only considering the case against Scott and one other co-defendant.[1] The court further instructed the jury on parties to a crime, the fact that the State had the burden of proving the guilt of each individual defendant beyond a reasonable doubt, and that the jury was free to acquit an individual defendant even if it found the other defendant guilty. Viewing the charge as a whole, then, we find that the indictment naming several individuals was not confusing to the jury and that there was no error here. Cf. *Nicholson v. State*, 265 Ga. 711, 713-714 (3) (462 SE2d 144) (1995) (jury charge containing mixed references to the "defendant" and the "defendants" was not confusing where court made clear in its charge as a whole that guilt or innocence of each defendant had to be determined independently).

4. In two enumerations, Scott contends that his trial counsel was ineffective for failing to object to the introduction of evidence seized from the silver Camry and for failing to preserve any objections to the jury charge. As we held in Divisions 2 and 3, supra, however, the trial court properly admitted the evidence seized from the silver Camry, and the trial court's jury instructions were not confusing. The failure to object to the introduction of this evidence and the failure to object

---

[1] The co-defendant was allegedly connected to the silver Lexus at the apartment complex, but he was later acquitted.

to the jury charges therefore did not amount to ineffective assistance. *Ray v. State*, 253 Ga. App. 626 (1) (560 SE2d 54) (2002); *Johnson v. State*, 275 Ga. 650, 654 (8) (571 SE2d 782) (2002).

    *Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JANUARY 4, 2006.

    *Sharon L. Hopkins*, for appellant.
    *Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.